Good morning, Your Honors. May it please the Court, I am Ina Lipkin on behalf of the petitioner. This case is a denial from the Board of Immigration Appeals regarding an asylum claim by a Sikh female who has established that she was persecuted, in fact, on the basis of her religion and on the basis of an imputed political opinion by the Indian authorities. The immigration judge in this matter erred in several respects in his findings. On the one hand, he had relied on speculation and conjecture to find that there was no nexus established, that the police acted legitimately in arresting her. Were the facts? Well, the hard question, it seems to me, is whether this rose to the level of persecution. And specifically, she said that what happened was in the process of an attempted rape. And let's assume for the moment that if it was an attempted rape, that would be sufficient to demonstrate persecution. But what evidence is there that it was an attempted rape? Well, in this case, which is not a real I.D. case, respondents own credible, uncontradicted evidence. I understand that. But she said it was an attempted rape. But is that sufficient for us to know that it was, in fact, an attempted rape as opposed to, you know, somebody pulling at her blouse in the course of, I don't know, pulling her down, pulling her to the chair or something? Well, I think the case law has always stated that it is the perception of the applicant claiming asylum that goes to the reasonableness of the fear. Well, I think the – I have the same issue that Judge Berzon is questioning about, and that is when you look at the physical things that happened to her, without labels attached, she was in the office alone with this police officer. He tore her blouse. It came off. And he was drugged. She hollered. He slapped her. He left, basically. I'm paraphrasing. But that's pretty much the extent of what physically happened to her. And when you lay that side by side with the cases where we've said you had to find persecution, where people were repeatedly raped and sodomized and horrible, horrible things happened to them, I'm trying to understand why we would be compelled to conclude that that rises to the level of persecution. I think in this case and in all cases, the Court needs to look at the cumulative effect of all the harm. The mere threat of rape that she thought he was going to complete the act should be a sufficient basis to find that threat along with the others. It seems to me there are two questions here. One is, if he had said to her, you know, I'm going to rape you, and she had testified. He said to me, I'm going to rape you, and he pulled my blouse and he started to undress me, but I managed to get away. So question A is, would that be persecution? And the second one is, is that what we've got here? But as to the – and it strikes me that the BIA didn't say which one it was doing. It didn't say whether it was finding as a matter of law that an attempted rape wouldn't work or it was finding there was an attempted rape. We don't know. Is that a sufficient reason to send the case back to the BIA? It is, Your Honor, because the mere fact that she was lucky enough to escape or to end that encounter doesn't mean that it couldn't have happened again had she not escaped the jail at all. If you recall, during the second arrest, she did manage to escape with her uncle's help and the bribe of a policeman. What's not to say that if she wasn't able to do so, the next night the officer would have been successful in raping her. So the fact that it – You seem to be sort of conflating what actually happened with the fear of future persecution. And the point you're making may go to the fear of future persecution, but what actually happened to her already? What's your closest case? What do you think is the case that factually what happened to the person is closest to what happened to your client? The only thing that comes to mind right now is Fatin, F-A-T-I-N, versus INS, but I'm not sure if there was some overruling on that case. That was a case of, I think, an Iranian person who had to wear a headdress, and that was against her beliefs of individual freedom. And the fact that she had to wear the headdress, which is many steps lower than an attempted rape, this Court found constituted persecution. So – Is that case in your brief? It is not. It is not in the brief. Could you please give us a – A sight? After argument is over, find the citation, put it on a piece of paper, and give it to – I will. Screw away. I will. But I can point the Court to a legion of other cases where threats alone constituted persecution, or threats alone – threats combined with economic harm or threats to family members. There's also a difference between saying that one could make that conclusion and one is compelled to make that conclusion. And under – I guess my difficulty is with the standard of review. It seems to me that if the BIA had said that this does rise to the level of persecution, we'd probably have to affirm that, but I don't understand why we wouldn't also have to do the contrary. That is, there's room for judgment here, and we have to be convinced that one is Well, Your Honors, when an individual comes before the immigration court and files a claim for asylum and states, I have been threatened repeatedly, I've been arrested without any basis, I've been detained, and I've been threatened, and an attempted rape has been made upon me, the Court has to also look at the societal norms from which the person is coming from. Here we have an Indian woman from a rural setting in the Punjab in India. The mere act of being arrested is enough to destroy her reputation, let alone if, say, the village was to know that an attempted rape was made upon her. She could be disqualified from marriage. She could be exiled from the village. Any number of things could happen. So we have to also look at the environment and the social norms of the place the person is coming from. When making the determination, did a specific action rise to the level of persecution? It might not be persecution in America if somebody tore the blast off of a victim and that person was able to get away, but it would in a place where a woman's purity is viewed as something that she has. Don't we have standards in our own cases, though, that we are looking at it from our own point of view in our society, what we consider to be persecution? I mean, in some societies, if a woman were forced to show her ankles or her face, it might shame her forever, but I can't find a case that would compel us to conclude that that's persecution under our own congressional standard. Again, Your Honors, the Court has repeatedly stated that when you evaluate the severity of harm, you must look at the social context from which the person comes from. It can't be ignored, and I don't think we can just put our American standards and our liberal mindedness on other cultures. What case do you have in particular? And it sounds perfectly sensible, but does what? Chichoub? Chichoub? I don't know if I'm pronouncing it right. Also versus INS. I'm sorry? Also versus the INS. Yes, for sure. On the fear of future persecution, I'm troubled by the notion that she still has family in the same village with two younger sisters who she says she doesn't know whether anything is happening to them, but that seems odd if she is in touch with them, at least occasionally. And if the younger sisters and the mom are able to live without being persecuted, why would she have a fear of persecution if she were to return? Well, I think there's a few factors involved here. A, the court has always stated that if remaining family is similarly situated and they're not experiencing problems, then indeed that does rebut a well-founded fear. However, in this case, a respondent did testify credibly that she spoke to her mother and her mother has been harassed since she has left India, and this would constitute a form of harassment or persecution. The judge didn't specify and didn't state in a cogent manner whether that was sufficient to rebut a well-founded fear. He just threw it out there. Secondly, she had testified credibly that she was the oldest girl, and in her opinion she thought she was targeted and not her siblings because that would have left more of a mark against the family. Right, but now she's gone, so someone else is the oldest girl.  Nothing in the record is there to prove that. Counsel, your time has expired, and I think we'll hear from the government. Thank you. Thank you. Good morning. May it please the Court. My name is Anthony Norwood, and I'm here today representing the Respondent. Your Honor, the Petitioner did not credibly establish that she suffered past persecution. Your Honor, there's no credibility issue here, is there? I believe there is, Your Honor. Excuse me, but just a minute. May I state my question? Yes, ma'am. All right. The BIA did not, even though the IJ may be a credibility finding, although it's not clear that he did, the BIA seems to have affirmed solely on the ground that there was no persecution, and under our case law, isn't that sufficient just to wash the credibility issue out of the case? The way I read the BIA's decision, they agreed with the immigration judge across the board. It's a per curiam decision. I think they agreed with the immigration judge across the board. They did specifically mention there's no past persecution, but I believe that there is. I'm sorry, but where do you find that? It says we have reviewed the record, and we agree that the Respondent failed to meet her burden of establishing past persecution, or that it's more likely not that she will be persecuted. I mean, it cites some cases, none of which are credibility cases, I don't think, and that's it. But if she didn't meet her burden of past persecution, part of it is on the basis of the fact that she didn't credibly establish her claim. I believe that the immigration judge, we look here to the immigration judge's decision, and there is a credibility issue, and there's an alternative. But they specifically did not affirm the IJ's opinion, say they agree with it, unlike most of the time. They didn't say that. They said we agree that the Respondent failed to meet her burden. They didn't say we agree with the IJ's opinion. Well, the credibility issue is part of her burden. But I would also argue, Your Honor, and I do also argue that she didn't establish past persecution. The harm that she alleged simply doesn't rise to the level of past persecution. The first arrest we didn't even talk about this morning. I'm sorry? The first detention we didn't, you haven't even talked about this morning. She didn't, she couldn't testify whether she was beaten or whether or not she was beaten. She said she was, and then she said she wasn't. With the second detention, she said she was taken to a cell and was being held in a cell, and then a drunken officer took her to a room and either attempted to rape her or just ripped her blouse. It's not clear what she said happened. She didn't clearly establish anything happened in that room other than it was unpleasant. And then she stayed there that night, and an elderly policeman came and said he'd been bribed to take her away, and so he escorted her from the detention center. It simply doesn't rise to the level of past persecution, and if that's the way you read the BIA's decision. But we don't, what we can't tell from, because everything's so cryptic, is whether the BIA was holding that even assuming there was an attempted rape, that doesn't arise to past persecution, or that they don't see the evidence as proving there was an attempted rape. Does it matter which it is? I don't think it matters which it is. I think it's the BIA, on that point, the BIA says she didn't establish past persecution, and the harm that she claims simply doesn't rise to the level of past persecution. And plenty of people do. Suppose the guy had said to her, you know, I'm going to rape you, and started to do so, and then she managed to scream and he left. Would that, do you read the BIA's opinion as saying even if that happened, it's not past persecution? With this BIA's decision, I would read that as saying that doesn't rise to the level of past persecution. And do you think that's right? It could be right. It could be upheld. It's a question of whether the evidence compels the conclusion of past persecution. And that's the next question. Is this really, I've always wondered about this, because I think our, but we do have case laws saying that the issue of what is persecution is actually a legal issue. Does that seem, is that right or not? It is right to an extent, Your Honor, but in this case, I believe this is a factual, I believe this is a factual question. This is a substantial evidence question, whether the harm rises to the level of persecution. And this is, as the judge pointed out. But why wouldn't the issue of whether an acknowledged attempted rape is persecution be a legal question? If it was, if we knew it was an attempted rape. Ultimately, that could be a legal question, Your Honor, but I think here it's a substantial evidence factual question. Why? What does that mean? I don't understand. It either is or isn't. It's either a legal question or it isn't. I think here it's a factual question. Why? Because it's a question of that the Petitioner's evidence did not rise to the level of past persecution, and it doesn't rise to the level. The level of harm does not rise to the level of past persecution. I have a concern about the imputation of the father's beliefs. Is it your view that in order to, for this to be political, the officers had to think that this young woman was a Sikh separatist, or did they merely have to be persecuting her because her father was a Sikh separatist and they thought they could gain some advantage, political advantage, by persecuting her? They would have to believe that she was a Sikh separatist. Now, why is that? That doesn't make any sense to me. I believe that's where the line is. If someone is persecuted because of their relative's politics and they can't help it, that seems almost worse than being persecuted for your own politics. I think that's what Aliyah Zacharias stands for, Your Honor. I'm sorry? I think that's what Aliyah Zacharias stands for. It's got to be the victim's opinion, and I don't think she has this opinion. Well, Aliyah Zacharias doesn't deal with this problem because it doesn't deal with the relative retribution problem. Not exactly, Your Honor. That's correct. But I think it's a... A case that does sort of deal with it is Thomas, which was, and I don't know what's happened to Thomas since it went back to the BIA, but that was on the... This scenario was essentially litigated as a family as a social group issue. Family as a social group. And I don't know whether the BIA ultimately concluded that that was or wasn't a viable theory. I don't know what's happened to Thomas either, but as I remember Thomas and as I think about fear that rose in Thomas was so different from the level of harm that... Well, what about the contextual question of the fact of if an Indian woman actually was in some way touched by a man who was not her husband and attempted to be raped, why isn't in context that sufficient to rise to the level of persecution? See, I don't understand whether you're arguing that attempted rape is not past persecution or that there wasn't enough evidence to have attempted rape. It seems to me to be very important to know what it is, and I don't know what it is. I don't know what you're arguing. My argument is there's not enough evidence to show that there's an attempted rape. There's not... This is the first time you've said that. Certainly the BIA didn't say that. The evidence does not establish sufficient harm in that second detention. She sat there for an hour and then was escorted out by an elderly guard. It just doesn't rise to the level of past persecution. The harm's not sufficient. She said it was an attempted rape and that her clothes were removed, and then she said that just a blouse was ripped. It's not clearly established. I would say it's not credibly established that the event took place or that it arises because the evidence compels the conclusion that she faced past persecution. I think this case wasn't cited, but do you, by any chance, know of a case called Navas v. Ionis, a Ninth Circuit case from 2000? It talks about guilt by association and back to the question of the imputation of the political views. I haven't read that case, Your Honor. I don't know. What if you had, like, a 5-year-old child who's persecuted because her father is a Sikh separatist? Would you say she loses because no one could possibly think a 5-year-old child was a Sikh separatist and that you wouldn't impute the political views of her father to her? Your Honor, it's not the question of what I would say. It's a question of what the law would say. Excuse me. It's a question of what the BIA would say and what the immigration judge would say. And in this case the What would they say? It's possible, Your Honor. It's a hypothetical that it's possible. But then you're separating a 5-year-old child from his parent. Then you're back to the Thomas question, which is persecution on account of membership in a family that somebody is mad at for some other reason. That's correct. But that was not presented in the briefs below. The cultural situation was not briefed below. It hasn't been argued that we have an eggshell plaintiff or anything like that. It's a question of past persecution. It does rise to the level of past persecution. No further questions? Thank you very much. And since counsel used up her time, we will do you want to hear rebuttal? I'm sort of interested in the implication of political opinion. We'll give you a minute for rebuttal. Just if you have anything further on the imputation of political opinion question. Well, I'd like to just add that the Court mentioned novice. And, you know, the Court has said that the petitioner's association with or relationship to people are known to hold a particular political opinion and establishes persecution. And I think, you know, the Thomas case, which I think it's at the Board. I'm not sure. It clearly states that, you know, a family tie is one of those grounds for establishing, you know, persecution on account of a political opinion. Besides which, Thomas was vacated by the Supreme Court. So you can't go forward in that theory. Well, it was vacated only because the Ninth Circuit failed to remand under INS v. Ventura. But it was still vacated. So the question is whether there's an alternative theory, which is a direct imputation theory, at least under certain circumstances. I mean, Thomas was odd because the family members specifically did not share the views of the father, and everybody knew that. So there was no possible imputation, actually. I think the petitioner in the administrative record actually states that the police said to her, implied that they believed she was engaged in terrorist activity. I'm trying to find for the court where. Well, they said that about her father at 130 and 131, but. Well, they said the way she got out was the villagers came and said she was an innocent girl, which sort of implies that somebody thought that somebody suspected her of something. I'm having trouble finding it in my notes. But she said something to the effect of that the police said, lady, and then something, you know, you are a terrorist or something about you know about terrorists. And the fact that her father was involved in the Sharmani Kali Dalman and participated in, you know, anti-national activities, you know, being her daughter, and the fact that she did not know his location, they perceived her as someone who was perhaps hiding him from the police and therefore imputed the same anti-national activity onto her. I wish I could find the. Well, we'll find it, counsel. You have exceeded your time by quite a bit. So we'll submit this case now and move to the next case on our nocket this morning.
judges: Graber, Berzon, Wilken